IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

7/8/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

| | | |
|---|---|---|
| JAMES R. KACHELRIES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:25-cv-00929 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| STEAMROLLER STUDIOS, LLC, | ) | By:  Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Five days after requesting (and being granted) an accommodation for his attention deficit hyperactivity disorder ("ADHD"), Plaintiff James R. Kachelries ("Kachelries") was fired from his position as Lead Animator for Defendant Steamroller Studios, LLC ("Steamroller") Kachelries now brings claims under the Americans with Disabilities Act ("ADA") against Steamroller, alleging disability discrimination, failure to accommodate, and retaliation. Steamroller has moved to dismiss the disability-discrimination and failure-to-accommodate claims. For the reasons discussed below, the court will grant Steamroller's motion as to Kachelries's disability-discrimination claim but deny it as to his failure-to-accommodate claim.

I.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

The following facts are recited as Kachelries alleges them in his amended complaint, and, at this stage, the court accepts the allegations as true.[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] The court will also consider the exhibits provided by Steamroller in its brief. A Rule 12(b)(6) motion to dismiss "'tests the sufficiency of a complaint,' and [a court's] evaluation is thus generally limited to a review of the

Kachelries suffers from ADHD. (Am. Compl. ¶ 38, [ECF No. 19].) His ADHD "substantially limits his executive functioning, concentration, memory, and processing of spoken information." (*Id.* ¶ 15.) Steamroller hired Kachelries as an Animator on January 27, 2020. (*Id.* ¶ 6.) Kachelries disclosed his ADHD to members of management at various times while employed at Steamroller, including Scott Wiser, who was Kachelries's supervisor at the time he was fired. (*Id.* ¶¶ 16–17.)

Kachelries contends that he was qualified for his position and that, during his employment, he performed his duties in a satisfactory manner. (*Id.* ¶ 14.) Kachelries specifies that, on April 25, 2023, he received a positive performance review from Steamroller's Head of Animation, Amanda Renfroe, with ratings of "Exceeds Expectations" in various categories and a rating of "Outstanding" in the teamwork category. (*Id.* ¶ 7.)

On or about June 20, 2023, Kachelries raised concerns regarding the conduct of Steamroller's leadership to Renfroe and Steamroller's other Head of Animation, Stephen Melagrano. (*Id.* ¶ 9.) Kachelries had previously raised similar concerns to Renfroe, Head of HR Sonata Brown, and owner Jalil Sadool. (*Id.*) Following a meeting with Renfroe and Melagrano, Kachelries claims that he noticed a change in treatment by his supervisors. (*Id.* ¶

---

allegations of the complaint itself." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)). A court may, however, consider a document that is explicitly incorporated into the complaint by reference and/or attached to the complaint as an exhibit, as well as a document submitted by the movant "that was not attached to or expressly incorporated in [the] complaint, so long as the document [is] integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166. A document is integral to a complaint where the complaint "relies heavily upon its terms and effect." *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

Here, Exhibit A is an Employee Warning Form from the January 2024 admonishment given to Kachelries, and Exhibit B is the notice provided to Kachelries informing him of his termination. (*See* Def. Br. Supp. Mot. Dismiss, Ex. A, B.) These exhibits are integral to Kachelries's amended complaint because he explicitly describes the January 2024 warning and his termination—including the reasons for both—and does not dispute the authenticity of either document.

10.) Around that time, Kachelries's then-supervisor, Aine Graham, lodged complaints against Kachelries for *his* alleged conduct. (*Id.*) Kachelries alleges that these complaints were "inconsistent" with his prior performance history "and, in at least one instance, were based on an unrecorded meeting that did not accurately reflect the interaction." (*Id.* ¶ 11.) On November 1, 2023, Kachelries proactively sought feedback regarding his communication approach from HR Representative Anna Matheny. (*Id.* ¶ 12.) Despite Graham's complaints and Kachelries's perceived change in treatment by his supervisors, he was promoted to Lead Animator on December 22, 2023, with a raise effective January 9, 2024. (*Id.* ¶ 13.)

On January 16, 2024, Steamroller issued Kachelries a final warning for behavior it described as "unprofessional and disruptive." (*Id.* ¶ 24.) The warning provided that a failure to take corrective action would result in "further disciplinary measures, up to and including termination." (Def. Br. Supp. Mot. Dismiss, Ex. A [ECF No. 22-1].) Following the warning, Kachelries was assigned to a new project with different management. (Am. Compl. ¶ 25.) He alleges that he performed the project successfully and "contributed meaningfully to the team's work." (*Id.*) After he completed that project, Kachelries was assigned to a team managed by Scott Wiser, and disciplinary issues resumed. (*Id.*)

Kachelries alleges that he disclosed his ADHD to members of management, including Wiser. (*Id.* ¶¶ 16–17.) He claims that, during discussions about his ADHD, Wiser "referenced prayer and religious faith as a means of addressing personal challenges, rather than engaging in the interactive process required under the ADA." (*Id.* ¶ 18.) On November 4, 2024, Kachelries met with HR Representative Michael Aguinaga regarding his concerns about how management was responding to his ADHD. (*Id.* ¶ 19.) Aguinaga advised Kachelries to review

available accommodations. (*Id.*) The next day, Kachelries was disciplined for his work on a task, which was reassigned to another animator. (*Id.* ¶ 26.) Kachelries contends that the other animator encountered the same issues that Kachelries had previously conveyed to his supervisor, but this animator was not similarly disciplined. (*Id..*) Then, on November 13, Kachelries "requested a reasonable accommodation in the form of additional time to complete assignments." (*Id.* ¶ 20.) Steamroller indicated that Kachelries's task was updated to reflect the additional time he requested, but Kachelries contends that he was "not given a meaningful opportunity to utilize the accommodation." (*Id.* ¶ 22.) On November 14, Kachelries's supervisor suggested that he consider resignation. (*Id.* ¶ 27.) Four days later, on November 18, Steamroller terminated Kachelries for performance and conduct issues. (*Id.* ¶¶ 28–29.)

Kachelries filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation based on disability, religion, and protected activity. (*Id.* ¶ 33.) On September 19, 2025, the EEOC issued Kachelries a Notice of Right to Sue, and Kachelries filed a *pro se* complaint in this court on December 18, 2025. (*Id.* ¶ 35; Compl. [ECF No. 1].) After securing counsel, Kachelries filed an amended complaint on March 24, 2026, asserting claims of disability discrimination (Count I), failure to accommodate (Count II), and retaliation (Count III) against Steamroller—all arising under the ADA. (Am. Compl. ¶¶ 37–48.) On April 10, 2026, Steamroller moved to dismiss Counts I and II. (Def. Mot. Dismiss [ECF No. 21].) The matter has been fully briefed, and the matter is ripe for disposition.[2]

---

[2] The court dispenses with oral argument after a thorough review of the relevant pleadings and the parties' written submissions.

## II.  STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). When evaluating the sufficiency of a complaint, the court is obligated to consider the factual allegations asserted in the complaint as well as any exhibits attached thereto. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing Fed. R. Civ. P. 10(c)).

## III.  DISCUSSION

Steamroller has moved to dismiss Counts I and II of Kachelries's Amended Complaint; it does not challenge Count III (retaliation) at this stage. (Def. Reply Br. at 2 [ECF No. 26].)

### A.  Count I: Disability Discrimination

Employers may not discriminate against qualified employees "on the basis of their disability." 42 U.S.C. § 12112(a). "The ADA prohibits wrongful discharge as a form of disability discrimination." *Kelly v. Town of Abingdon*, 90 F.4th 158, 169 (4th Cir. 2024). To sustain a wrongful-discharge claim, "the plaintiff must allege that '(1) he was a qualified individual

with a disability; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination.'" *Id.* (quoting *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (cleaned up)). Kachelries alleges that he suffers from ADHD, a qualified disability under the ADA, and that he was discharged from his employment with Steamroller on November 18, 2024. (Am. Compl. ¶¶ 15, 27–28, 38.) Steamroller argues that Kachelries's claim fails at the third and fourth elements.[3] Because the court concludes that Kachelries failed to plausibly allege that he was meeting Steamroller's legitimate expectations (the third element), the court will not reach the fourth element.

While a plaintiff need not "show that he was a perfect or model employee[,]" he must plausibly allege that *at the time of discharge*, "he was meeting the employer's legitimate expectations." *Haynes v. Waste Connections, Inc.*, 9 F.3d 219, 225 (4th Cir. 2019); *see Dimaano v. Va. Ctr. Behav. Rehab.*, No. 3:23-cv-312, 2024 WL 3823795, at *11 (E.D. Va. Aug. 13, 2024) (holding that a positive performance evaluation a month before termination was insufficient to establish employer's expectations were being met at termination). Therefore, to survive the motion to dismiss, Kachelries must plausibly allege that he was fulfilling Steamroller's legitimate expectations when he was terminated on November 18, 2024.

Kachelries relies on three allegations in his complaint to establish that he was meeting Steamroller's legitimate expectations at the time of his termination: (1) a positive performance review on April 23, 2023; (2) a promotion and raise, effective January 9, 2024; and (3)

---

[3] Steamroller argued in its initial brief that Kachelries did not allege in his amended complaint that he had a qualifying disability under the ADA, but it retracted that argument and conceded that Kachelries sufficiently alleged that he had a disability (ADHD). (*See* Def. Br. Supp. Mot. Dismiss at 6; Def. Reply Br. at 3 n.1.)

successful performance and contribution to a project at some undisclosed time after January 16, 2024. (Am. Compl. ¶¶ 7, 13, 25.) But these allegations say nothing about Kachelries's performance as Lead Animator 10 months later, when he was terminated. Moreover, the amended complaint alleges facts suggesting just the opposite: that Kachelries was not meeting Steamroller's legitimate expectations. Kachelries received complaints from supervisor Aine Graham, a final warning for his conduct on January 16, 2024,[4] a reassignment accompanied with "disciplinary issues" after the final warning, and further discipline on November 5, 2024, before being terminated on November 18, 2024.[5] (Am. Compl. ¶¶ 10, 23, 25–26.)

A court in this district recently dismissed a disability-discrimination claim under similar facts. *See Fuller v. Culpeper County*, No. 3:22-cv-00058, 2023 WL 2931855, at *10 (W.D. Va. Apr. 13, 2023).[6] The plaintiff in that case suffered from a mental impairment and had received both a positive performance evaluation and a promotion within a year of her termination. *Id.* at *9. But, like Kachelries, she was disciplined and ultimately terminated due to her inappropriate

---

[4] In the Employee Warning Form (attached to Steamroller's brief as Exhibit A), Kachelries's behavior was described as "unprofessional and disruptive," with actions "causing tension and disruption." (Def. Br. Supp. Mot. Dismiss, Ex. A.) Kachelries's behaviors, as described in the warning, included "condescension, reluctance to listen, and passive-aggressive outbursts in conversation." (*Id.*)

[5] Steamroller attached the notice it sent to Kachelries regarding his termination as Exhibit B. In that document, Steamroller provided details of the November 5 disciplinary conversation, alleging that Kachelries "ignored supervisor directives" instructing him "not to perform any leadership responsibilities." (Def. Br. Supp. Mot. Dismiss, Ex. B.) The document also makes note of an October 24 disciplinary meeting with Kachelries, which was not referenced in Kachelries's amended complaint.

Although Kachelries takes issue with the reasons given for his termination—specifically, performance and conduct issues—and calls them "inconsistent with [his] documented performance history (Am. Compl. ¶ 29), he does not directly allege that those reasons were false or pretextual.

[6] The plaintiff in *Fuller* brought the complaint *pro se*, and in the Fourth Circuit, courts must construe such complaints liberally. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A similar fact pattern failing to survive the motion-to-dismiss stage even with a liberal construction reinforces the weakness of Kachelries's allegations that he was meeting Steamroller's legitimate expectations.

workplace behavior following the promotion. *Id.* at *3. Moreover, just as in this case, substantial time passed between the alleged positive performance and termination, and this protracted period was marked by various incidents requiring discipline from her employer.

Kachelries cites to three cases to save his claim from dismissal. *See Haynes*, 922 F.3d at 225; *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 380 (4th Cir. 2022); *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 650 (4th Cir. 2021). In two of those cases, the plaintiffs received positive feedback or acknowledgment from their employer within two weeks of the employer's adverse action. *See Haynes*, 922 F.3d at 222 (employee received positive feedback 13 days before termination); *Sempowich*, 19 F.4th at 651 (employee received a performance-based bonus 12 days before reassignment). Although a few months passed between the positive feedback and the plaintiff's termination in *Cowgill*, these events were still much closer in time than the 10-month gap between Kachelries's raise and his termination. *See Cowgill*, 41 F.4th at 376–77. Further, the *Cowgill* plaintiff lacked the same record of disciplinary action that Kachelries has alleged—a record which undermines the plausibility of Kachelries's claim that he was meeting Steamroller's legitimate expectations.[7] *See id.* at 380 (reversing summary judgment for

---

[7] In his brief, Kachelries argues that the court should not accept Steamroller's "characterization of events" in its termination notice "as determinative" because he disputes that characterization, which is reflected in the "Employee Comments" section of the termination notice. (Pl. Br. Opp. Mot. Dismiss at 5; *see also* Def. Br. Supp. Mot. Dismiss, Ex. B.) To be sure, the court is not accepting Steamroller's recollection of the circumstances behind his termination as determinative, but it *is* considering the fact that Kachelries was disciplined on multiple occasions, as alleged in his amended complaint, to the extent that those facts are relevant to whether Kachelries sufficiently alleged that he was meeting Steamroller's legitimate expectations at the time of his termination.

Additionally, a dispute over Steamroller's characterization of events in its the Employee Warning Form and termination notice does not prevent the court from considering those documents for other, proper purposes. As noted above, the court will consider the exhibits (the employee warning form and termination notice) attached to Steamroller's brief and the information contained in them (without construing that information in Steamroller's favor) because they are integral to Kachelries's amended complaint and Kachelries does not dispute the *authenticity* of these exhibits. *See Goines*, 822 F.3d at 166.

defendant where the basis for the plaintiff's termination was two instances of call avoidance, but the employee had "routinely received above-average performance reviews"). Ultimately, *Cowgill*, *Haynes*, and *Semptowich* materially differ from this matter, because, in those cases, there was no substantial gap in time between the employer's positive feedback and the employee's subsequent termination. The court thus finds that Kachelries has not sufficiently alleged that he was meeting Steamroller's legitimate expectations *at the time of* discharge. His disability-discrimination claim must be dismissed.

### B. Count II: Failure to Accommodate

Kachelries alleges that Steamroller "failed to provide a meaningful accommodation" by terminating him days after he requested the accommodation. (Am. Compl. ¶ 44.) To establish a failure-to-accommodate claim under the ADA, a plaintiff must allege:

> (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations.

*Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). The parties appear to agree that Kachelries sufficiently pleaded the first three elements of a *prima facie* failure-to-accommodate claim. (Def. Reply Br. at 8–9 (disputing only the fourth element).) Steamroller argues that Kachelries's claim fails at the fourth element—that Steamroller refused to provide Kachelries with an accommodation. (Def. Br. Supp. Mot. Dismiss at 9.) Specifically, Steamroller points out that Kachelries alleges that, after he asked for extra time as an accommodation for his ADHD, Steamroller updated his task "to reflect additional time." (*Id.*; Am. Compl. ¶ 22.) Steamroller therefore contends that, because Kachelries expressly alleged that it granted his

accommodation request, the failure-to-accommodate claim must be dismissed. (Def. Br. Supp. Mot. Dismiss at 9.) Kachelries counters that, because Steamroller did not give him a "meaningful opportunity to utilize the accommodation," Steamroller constructively refused to provide the accommodation. (Pl. Br. Opp. Mot. Dismiss at 6 [ECF No. 25]; Am. Compl. ¶ 22.)

Kachelries points to *Donaldson v. Trae-Fuels, LLC* to support his position. 399 F. Supp. 3d 555 (W.D. Va. 2019). In that case, the court held that Donaldson stated a claim for failure to accommodate because he "plausibly allege[d] that the defendants 'terminated [his] employment rather than retain him as an employee and provide [the requested accommodation].'"[8] *Id.* at 560–61. At bottom, the court highlighted the principle that "employers cannot 'escape liability for failure to provide reasonable accommodation by terminating employment'" shortly after granting the accommodation. *Id.* at 560 (quoting *Roberts v. Progressive Indep., Inc.*, 183 F.3d 1215, 1220 (10th Cir. 1999)); *see also Anderson v. Roche Carolina, Inc.*, No. 4:10–2792, 2012 WL 368710, at *10 (D.S.C. Feb. 3, 2012) (denying summary judgment for defendant because the evidence—viewed in the light most favorable to the plaintiff—showed that defendant terminated her employment to avoid accommodating her disability). Therefore, the *Donaldson* court recognized an exception to the rule that an employer's grant of an accommodation defeats a failure-to-accommodate claim, where a

---

[8] The *Donaldson* court also found that the plaintiff's plausible allegation that the defendants terminated his employment to avoid providing the requested accommodation supported his disability-discrimination claim (via wrongful termination). 399 F. Supp. 3d at 560–61. Although the *Donaldson* court did not break down its analysis of the disability-discrimination claim, the court will construe that allegation as satisfying the fourth prong of the disability-discrimination claim (reasonable inference of unlawful discrimination). Kachelries's plausible allegation to that same effect also satisfies the fourth element of his disability-discrimination claim— but ultimately does not change the outcome for that claim because his complaint failed to plausibly allege that he was meeting Steamroller's legitimate expectations. (*See supra* Part III.B)

plaintiff plausibly alleges that his employer terminated his employment because it no longer wanted to (or never intended to) honor a granted accommodation.

Steamroller argues that *Donaldson* is inapposite because the plaintiff had never received any negative feedback (unlike Kachelries) and was not given a reason for termination. (Def. Reply Br. at 10 (citing *Donaldson*, 399 F. Supp. 3d at 557).) But the *Donaldson* court did not base its determination that the plaintiff plausibly alleged failure to accommodate on those facts; rather, the court relied on that lack of negative feedback to conclude that the plaintiff had stated a claim for *disability discrimination*. *See Donaldson*, 399 F. Supp. 3d at 560. In its analysis of the failure-to-accommodate claim, the court seized on the short time frame between the defendants' grant of the requested accommodation and their decision to terminate Donaldson. *See id.* at 560–61. Here, the temporal proximity between the granting of Kachelries's accommodation request and his termination is more pronounced—a mere five days. (Am. Compl. ¶¶ 20, 28–29.)

Steamroller also argues that Fourth Circuit allows for termination based on impropriety or misconduct, even when an employee has a disability. Thus, according to Steamroller, the fact that Kachelries had been repeatedly disciplined before requesting the accommodation defeats his claim that Steamroller fired him to avoid accommodating his ADHD. (Def. Reply Br. at 9–10); *see Halpern v. Wake Forest Univ. Health Sci.*, 669 F.3d 454, 465 (4th Cir. 2012) (quoting *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 696 n.3 (4th Cir. 1997)). Steamroller relies on *Halpern* in support of its argument. In *Halpern*, the Fourth Circuit held that the medical school was not required to ignore the student's repeated misconduct just because the student requested an accommodation after the misconduct. *Id.* The court rejected the failure-to-

accommodate claim because the plaintiff's disciplinary infractions preceded his accommodation request, and therefore the plaintiff's dismissal constituted a reasonable consequence to his actions rather than a failure to accommodate. *See id. Halpern* may very well be instructive here, but the Fourth Circuit was reviewing the district court's grant of summary judgment and had the benefit of an evidentiary record in making its ruling. Although Steamroller may, in fact, have had a legitimate, independent basis for dismissing Kachelries (and while that argument may carry the day at summary judgment), the court cannot reach that conclusion at this preliminary stage.

Accordingly, at this stage, Kachelries has plausibly alleged that Steamroller failed to accommodate his ADHD by terminating his employment five days after granting his accommodation request.

## IV.    CONCLUSION

For the reasons discussed above, Steamroller's partial motion to dismiss will be granted as to Count I and denied as to Count II.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 8th day of July, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE